**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **PORTUS SINGAPORE PTE LTD.**<br>**& PORTUS PTY LTD.,**<br>　　　**Plaintiff,**<br><br>**v.**<br><br>**PANASONIC CORPORATION OF**<br>**NORTH AMERICA,**<br>**Defendant.** | **Civil Action No. 3:26-cv-01829**<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD (collectively "Plaintiff" or "Portus") file this Original Complaint and demand for jury trial seeking relief for infringement of the claims of U.S. Patent No. 8,914,526 (the "'526 patent") and U.S. Patent No. 9,961,097 (the "'097 patent") (collectively, the "Patents-in-Suit") by Defendant, Panasonic Corporation of North America ("Panasonic" or "Defendant") during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

**I. THE PARTIES**

1. Plaintiff PORTUS SINGAPORE PTE LTD is a Singapore company with its principal place of business located at 6 Shenton Way, #41-01 OUE Downtown, Singapore 068809.

2. Plaintiff PORTUS PTY LTD is an Australian company with its principal place of business at C/-JGS Property Level 15, 60 Margaret Street, Sydney NSW 2000, Australia.

3. On information and belief, Defendant Panasonic Corporation of North America is a corporation organized and existing under the laws of the State of Delaware, with a regular and established place of business in this District located at 13615 Welch Rd, Dallas, Texas 75244-

4588 and 3461 Plano Pkwy, The Colony, Texas 75056. On information and belief, Defendant sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district. Defendant is registered to do business in Texas and may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. Street, Suite 620, Austin, Texas 78701, at its place of business, or anywhere Defendant may be found.

4. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, operates, provides, maintains, and/or supports infringing products, applications, cloud services, account systems, access-point systems, camera systems, remote monitoring systems, and related services in the United States, including in this District, and otherwise has directed infringing activities to this District in connection with its products and services.

## II. JURISDICTION AND VENUE

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial making, using, selling, offering for sale, importing, operating, providing, and supporting of the Accused Instrumentalities in the United States during the enforceable terms of the Patents-in-Suit. This Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the Northern District of Texas has general and specific personal jurisdiction over Defendant because, directly and through intermediaries,

2

Defendant has committed acts within the District giving rise to this action and is present in, transacts business in, and conducts business with residents of this District and the State of Texas.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

8. Defendant has committed acts of infringement within this District and the State of Texas by making, using, selling, offering for sale, importing, distributing, providing, operating, and/or supporting the Accused Instrumentalities, including without limitation Panasonic HomeHawk systems, HomeHawk access points, HomeHawk cameras, HomeHawk mobile applications, Panasonic cloud services, Panasonic account and authentication services, Panasonic remote-access servers and web servers, and related hardware, software, and network infrastructure configured to remotely monitor and/or control devices located in user premises networks.

9. This Court has personal jurisdiction over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this District, and, on information and belief, specifically as a result of, at least, committing acts of patent infringement within Texas and this District. Defendant provides products and services accused of infringement to residents of this District that Defendant knew and intended would be used within this District, solicits business from residents of this District, and derives substantial revenue from goods and services provided to residents of this District and Texas.

10. This Court also has personal jurisdiction over Defendant because, in addition to Defendant's regular and established place of business located at 13615 Welch Rd, Dallas, Texas 75244-4588, Defendant has made the Accused Instrumentalities available within this judicial District and has advertised to and solicited residents within the District.

3

11. The amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1400(b). Defendant is incorporated in Delaware and therefore does not reside in Texas for purposes of § 1400(b), but, on information and belief, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District located at 13615 Welch Rd, Dallas, Texas 75244-4588. Defendant also advertises, markets, sells, offers to sell, distributes, provides, and supports the Accused Instrumentalities in this District.

## III. THE PATENTS-IN-SUIT

13. On December 16, 2014, the '526 patent, entitled "LOCAL AND REMOTE MONITORING USING A STANDARD WEB BROWSER," was duly and legally issued by the United States Patent and Trademark Office. The face of the '526 patent identifies a PCT filing date of December 17, 1999 and a patent term adjustment of 173 days. Accordingly, absent any earlier terminal disclaimer, lapse, or other enforceability limitation, the '526 patent expired no later than June 7, 2020. Plaintiff does not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '526 patent. A true and correct copy of the '526 patent is attached hereto as Exhibit A.

14. On May 1, 2018, the '097 patent, entitled "SYSTEM FOR REMOTE ACCESS OF A USER PREMISES," was duly and legally issued by the United States Patent and Trademark Office. The face of the '097 patent identifies U.S. Patent Application No. 14/536,784, filed November 10, 2014, as a continuation of U.S. Patent Application No. 09/868,417, filed as PCT/AU99/01128 on December 17, 1999, and further states that the '097 patent is subject to a terminal disclaimer. Plaintiff asserts the '097 patent only for alleged infringement during its enforceable term and within the applicable damages period, and does not seek injunctive relief or

damages for any alleged infringement occurring after expiration of the '097 patent. A true and correct copy of the '097 patent is attached hereto as Exhibit C.

15. Portus owns the entire right, title, and interest in and to the Patents-in-Suit by assignment, including the right to bring this suit and recover damages for past infringement occurring during the enforceable terms of the Patents-in-Suit, subject to the applicable limitations period under 35 U.S.C. § 286 and any other applicable damages limitations. Defendant was not licensed to the Patents-in-Suit, either expressly or implicitly, and did not enjoy or benefit from any rights in or to the Patents-in-Suit during their enforceable terms.

16. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282 and claim patent-eligible subject matter.

## IV. TECHNOLOGY OF THE PATENTS-IN-SUIT

17. The Patents-in-Suit are directed to specific technological solutions for local and remote monitoring and control of user-premises systems through standard browser-access and external network architectures. The patents explain that users of advanced automation, security, and control systems commonly need both local and remote access, but conventional systems relied on cumbersome telephone-code or voice-command interfaces and did not provide a geographically independent standard interface that was universally accessible and not platform or hardware dependent. Ex. A, 1:10-56; Ex. C, 1:16-2:42.

18. The specifications identify concrete network-access problems in then-existing systems. Remote monitoring and control systems either assumed that the site to be controlled was already actively connected to the Internet, required technically burdensome manual connection steps, or required direct telephone access that could be expensive and impractical for geographically remote users. Ex. A, 1:50-2:8; Ex. C, 2:40-64. The patents further identify

surveillance and alarm-data problems, including that surveillance data could remain unprotected at the premises and that conventional systems did not provide practical remote interrogation and monitoring through a standard, location-independent interface. Ex. A, 2:9-31; Ex. C, 2:15-42.

19. The claimed inventions are not the abstract idea of remote monitoring or presenting information. They recite particular arrangements of hardware processing circuitry, external first networks, user-premises networks, access browser modules, communications servers, connection gateways, authentication or authorization data, URL-based access, creation of network communications sessions, web-server/browser interactions, and serving of information from user-premises devices. See, e.g., Ex. A, claim 57; Ex. C, claim 1.

20. The specifications describe concrete architectures that improve computer-network functionality. A browser accesses an extranet located outside the home environment; a communications server in that extranet interconnects on demand with a selected connection gateway in a predetermined home environment; and the selected gateway controls and/or monitors devices in the home environment. Ex. A, Abstract; 2:34-3:4; Ex. C, Abstract; 2:44-3:8. The external network may be implemented as a virtual private network across an Internet substrate, and when a customer connects to the home, the home effectively appears as a website with devices accessible for monitoring or control. Id.

21. The claimed arrangements provide technical benefits and non-conventional features, including separating the external network and communications server from user-premises networks, using authorization or authentication data to identify the particular premises network and gateway the user may access, establishing temporary communications sessions on demand, using web-server/browser interactions to provide seamless remote access, and allowing monitoring/control of devices without requiring the user to manually establish a direct technical

connection to the premises network. Ex. A, claim 57; Ex. C, claim 1.

22. The patents further disclose concrete structures and operations, including a provider extranet, distributed storage, distributed databases, communications servers, service nodes, Internet access devices, telecommunications networks, premises gateways, premises network terminals, appliances, sensors, control terminals, user-premises network protocol stacks, HTTP server functionality, TCP/IP protocol stacks, device drivers, and physical interfaces. Ex. A, Figs. 1-6; Ex. C, Figs. 1-6.

23. The Patents-in-Suit therefore claim specific improvements to computer-network access and remote user-premises monitoring/control technology, not merely an instruction to apply a generic business practice on a computer. The claims are directed to particular network architectures and ordered combinations that solve problems rooted in computer networking, remote access, authentication, and gateway-mediated user-premises device control.

## V. ACCUSED INSTRUMENTALITIES

24. The terms "Accused Instrumentalities" and "Accused Products" refer to, by way of example and without limitation, Defendant's Panasonic HomeHawk systems, HomeHawk mobile applications, HomeHawk access points, HomeHawk cameras, Panasonic cloud services, Panasonic account and authorization systems, Panasonic authentication systems, Panasonic servers and web servers, Panasonic communication interfaces, Panasonic home monitoring and control systems, related user devices configured to operate with the HomeHawk system, and all other substantially similar systems, components, applications, services, and instrumentalities used to remotely monitor and/or control devices located in user premises networks during the enforceable terms of the Patents-in-Suit. Plaintiff's infringement allegations are directed to accused making, using, selling, offering for sale, importing, operating, providing, and/or

supporting of those Accused Instrumentalities during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

25. The Accused Instrumentalities include at least one accused instrumentality group: Panasonic HomeHawk systems, including HomeHawk cameras, HomeHawk access points, the HomeHawk application, and related Panasonic cloud, account, authentication, and remote-access services. Exhibit B supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 57 of the '526 patent. Exhibit D supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 1 of the '097 patent.

**A. PANASONIC HOMEHAWK SYSTEMS - '526 PATENT**

26. Panasonic provides HomeHawk systems deployed at user premises and connected to Panasonic's HomeHawk application and related cloud services for remote monitoring and/or control. Exhibit B identifies the accused system as a Panasonic HomeHawk System, including cameras and access points deployed within a home or user premises and connected to the HomeHawk app for remote monitoring/control of devices in the home. Ex. B at 1-3.

27. For purposes of Plaintiff's infringement allegations under the '526 patent, Exhibit B identifies the first network as Panasonic's external cloud services network; the first arrangement of processing circuitry as Panasonic cloud services and backend processing circuitry programmed to manage phone/tablet registration, access points, added devices, device-state synchronization, and remote access; the user access browser device as smartphones, tablets, or other user devices running the HomeHawk app or browser-access functionality; and the second arrangements of processing circuitry as HomeHawk access points and associated network-connected HomeHawk hardware deployed in user premises networks. Ex. B at 4-8.

28. The Panasonic HomeHawk systems practice the preamble and limitations [57A] and

[57B] of claim 57 because they provide a system for remote access of user premises networks located in respective user premises; include a first external network with programmed processing circuitry that controls network access; include a hardware user access browser device; and include plural second arrangements of processing circuitry located in respective user premises networks. Ex. B at 1-8.

29. The Panasonic HomeHawk systems practice limitation [57C] because Panasonic's cloud services and HomeHawk backend are adapted by programming to initiate or cause the establishment of network connections with selected HomeHawk access points, cameras, and associated premises devices when an authorized user logs in, registers a mobile device, selects an access point or camera, or requests remote monitoring/control through the HomeHawk app. Ex. B at 9.

30. The Panasonic HomeHawk systems practice limitation [57D] because the HomeHawk app and corresponding network-access functionality operate as access-browser functionality for locating and examining information on Panasonic's first network and on user premises networks through URL/URI-addressed resources, HTTP/HTTPS endpoints, and user selections that cause the client to access predetermined network locations. Ex. B at 10-11. To the extent Defendant contends that a native mobile application is not literally a browser, the HomeHawk application is at least equivalent because it performs substantially the same access-browser function, in substantially the same URL/URI-addressed HTTP/HTTPS way, to achieve substantially the same result of locating and examining external-network and user-premises information.

31. The Panasonic HomeHawk systems practice limitations [57E] and [57F] because each registered HomeHawk access point, camera, or camera-connected premises device is accessible

by Panasonic's first circuitry arrangement, and Panasonic relies on authorization data, including system password, account, device-registration, and added-device association data, to determine which registered access point, premises network, camera, and device state the user is authorized to monitor and/or control. Ex. B at 12-14.

32. The Panasonic HomeHawk systems practice limitation [57G] because, after authorized access, Panasonic cloud services establish network communications with the selected registered access point or camera-connected premises network to access device state, stored data, live or recorded video, and/or deliver commands or updates. These communications create network sessions, including HTTPS/TLS request/response sessions, application sessions, and/or cloud synchronization sessions, that temporarily interconnect Panasonic cloud services with the determined user premises network for monitoring and/or control. Ex. B at 15-16.

33. The Panasonic HomeHawk systems practice limitations [57H] and [57I] because Panasonic obtains information contained within the user premises network from the selected HomeHawk access point, camera, or associated second circuitry arrangement and, using a Panasonic cloud services web server, serves that information to the user's HomeHawk access-browser device. Ex. B at 16-17.

34. The Panasonic HomeHawk systems practice limitations [57J] and [57K] because the communications session provides the user with seamless remote access to information stored on or obtained from the determined premises network, and monitoring/control is performed through interaction with information served by the selected access point, camera, or associated second circuitry arrangement. Exhibit B identifies the HomeHawk app as allowing a user to access devices while away from home and to view, monitor, and interact with device-derived information. Ex. B at 17-18.

10

**B. PANASONIC HOMEHAWK SYSTEMS - '097 PATENT**

35. Panasonic also infringed at least claim 1 of the '097 patent through the same HomeHawk systems, HomeHawk access points, HomeHawk cameras, HomeHawk app, and related Panasonic cloud services. Exhibit D identifies the accused system as a Panasonic HomeHawk System, including cameras and access points deployed within a home or user premises and connected to the HomeHawk app for remote monitoring/control of devices in the home. Ex. D at 1-3.

36. For purposes of Plaintiff's infringement allegations under the '097 patent, Exhibit D identifies the first hardware processing circuitry as user smartphones, tablets, or other devices running the HomeHawk app or access browser module; the second hardware processing circuitry as Panasonic cloud services located in a first network; and the connection gateway as the HomeHawk access point located in, and part of, a local network of the user premises. Ex. D at 4-7.

37. The Panasonic HomeHawk systems practice the preamble and limitations [1A] and [1B] of claim 1 because they provide a system for remote access of a user premises; include first hardware processing circuitry running an access browser module; include second hardware processing circuitry located in a first external network; and include a connection gateway located in, and part of, the local network of the user premises. Ex. D at 1-7.

38. The Panasonic HomeHawk systems practice limitations [1C] and [1D] because Panasonic cloud services are external to the user premises, accessible via the HomeHawk app/access browser module, and configured to communicate on demand with the HomeHawk access point connection gateway. The HomeHawk access point is integrated with or communicatively coupled to one or more networked components of the local network of the user

premises, including HomeHawk cameras. Ex. D at 9-11.

39. The Panasonic HomeHawk systems practice limitation [1E] because the system is configured such that user input through URL/URI-addressed app or browser resources causes the first hardware processing circuitry, using the access browser module, to access an address on Panasonic's first network, beginning a sequence in which Panasonic's second hardware processing circuitry responsively serves information regarding the local network components to the first hardware processing circuitry. Ex. D at 11-15. To the extent Defendant contends that the HomeHawk app does not require a visible manual URL typed into a browser bar, the claim is met literally or equivalently because user selections in the HomeHawk app invoke URL/URI-addressed HTTP/HTTPS endpoints and predetermined network addresses in the same way to produce the same remote-access result.

40. The Panasonic HomeHawk systems practice limitation [1F] because the sequence includes the first hardware processing circuitry transmitting authentication data, including password, device-registration, account, and/or authorization tokens, to Panasonic's second hardware processing circuitry, and that authentication data indicates authority to access at least one networked component of the local network. Transmission and verification of that authentication data is required for the serving of device information to the user's device. Ex. D at 16-17.

41. The Panasonic HomeHawk systems practice limitations [1G], [1H], and [1I] because the system supports a plurality of user premises, each with its own HomeHawk access point or connection gateway; Panasonic's second hardware processing circuitry is configured to connect to those gateways; Panasonic's second hardware processing circuitry determines which local network the authentication data indicates authority to access; and, upon verification, Panasonic

12

establishes a new communication session between the user device and the connection gateway of the authorized local network. Ex. D at 18-20.

42. The Panasonic HomeHawk systems practice limitations [1J] and [1K] because Panasonic's second hardware processing circuitry receives, via the access point connection gateway, selected information from at least one networked component of the local network, including camera information, video, images, event data, and device status, and stores selected information in the first network for subsequent review by a user associated with the user premises. The authority to access the local network component by transmitting authentication data also provides authority to access and review previously stored selected information in Panasonic's first network via the HomeHawk app/access browser module. Ex. D at 20-22.

## VI. DEFENDANT'S USE AND CONTROL OF THE ACCUSED SYSTEMS

43. Defendant has directly used the Accused Instrumentalities under 35 U.S.C. § 271(a) by putting the claimed systems into service and obtaining benefit from them. Defendant designs, provides, operates, maintains, and controls the Panasonic cloud services, account systems, authentication systems, servers, web servers, application interfaces, and remote-access infrastructure that make the HomeHawk system function as an integrated remote-access system. But for Defendant's operation of these components, the claimed combinations involving the HomeHawk app, Panasonic cloud services, HomeHawk access points, and HomeHawk cameras would not be put into service for remote monitoring/control.

44. To the extent Defendant asserts that end users, smartphones, tablets, routers, access points, cameras, application software, cloud servers, or other components are owned or operated by different actors, Defendant still directly infringes the asserted system claims because Defendant makes and sells the components as a system, configures them to operate together,

operates the cloud and authentication portions of the system, controls access to the cloud services, and derives commercial benefit from the complete remote-access functionality. Defendant's system is designed so that each claimed component is available for use and is used together as a single operative system when a user registers a device, authenticates, selects a camera or access point, and remotely monitors or controls the premises system.

45. Defendant also directs or controls the performance of any end-user steps that Defendant may contend are required to complete the accused operation. Defendant conditions participation in and use of the HomeHawk remote-access service on users downloading the HomeHawk app, registering mobile devices and access points, authenticating with the required password or credentials, associating cameras with access points, and using Defendant's prescribed interfaces and procedures. Defendant establishes the manner and timing of such use through its app design, setup flow, instructions, authentication requirements, cloud-service protocols, device registration requirements, and user-interface prompts.

46. The accused remote-access functionality also benefits Defendant. Defendant benefits from sales of HomeHawk products, customer adoption of Panasonic's remote-access ecosystem, user reliance on Panasonic cloud and app services, device registrations, continued support relationships, and the commercial value of offering cameras and access points that can be monitored and controlled remotely through the HomeHawk app. Defendant therefore uses and causes the use of the claimed systems and cannot avoid infringement by characterizing one portion of the integrated system as performed by a customer, a mobile device, a router, a camera, an access point, or cloud infrastructure.

## VII. COUNT I - INFRINGEMENT OF THE '526 PATENT

47. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully

set forth herein.

48. Defendant has directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '526 patent, including without limitation at least claim 57, under 35 U.S.C. § 271(a), by making, using, testing, selling, offering for sale, importing, operating, providing, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '526 patent and within the applicable damages period.

49. Defendant's Accused Instrumentalities practice at least claim 57 of the '526 patent for the reasons alleged above and as further supported by the preliminary exemplary infringement chart attached as Exhibit B. Exhibit B is incorporated by reference. These allegations are preliminary and based on publicly available information; Plaintiff reserves the right to supplement, modify, and amend these allegations based on discovery.

50. Defendant's infringement has caused Plaintiff damage. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement of the '526 patent during the enforceable term of the '526 patent and within the applicable damages period, in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284. Plaintiff does not seek injunctive relief or damages for alleged infringement occurring after expiration of the '526 patent.

51. Defendant has indirectly infringed, and/or contributed to infringement of, one or more claims of the '526 patent to the extent discovery shows that Defendant knew of the '526 patent during its enforceable term and induced or contributed to use of the Accused Instrumentalities by instructing, encouraging, and enabling customers and users to register HomeHawk devices, authenticate, connect access points and cameras, and use the HomeHawk app and Panasonic cloud services to remotely monitor or control user-premises devices.

## VIII. COUNT II - INFRINGEMENT OF THE '097 PATENT

52. Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein.

53. Defendant has directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '097 patent, including without limitation at least claim 1, under 35 U.S.C. § 271(a), by making, using, testing, selling, offering for sale, importing, operating, providing, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '097 patent and within the applicable damages period.

54. Defendant's Accused Instrumentalities practice at least claim 1 of the '097 patent for the reasons alleged above and as further supported by the preliminary exemplary infringement chart attached as Exhibit D. Exhibit D is incorporated by reference. These allegations are preliminary and based on publicly available information; Plaintiff reserves the right to supplement, modify, and amend these allegations based on discovery.

55. Defendant's infringement has caused Plaintiff damage. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement of the '097 patent during the enforceable term of the '097 patent and within the applicable damages period, in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284. Plaintiff does not seek injunctive relief or damages for alleged infringement occurring after expiration of the '097 patent.

56. Defendant has indirectly infringed, and/or contributed to infringement of, one or more claims of the '097 patent to the extent discovery shows that Defendant knew of the '097 patent during its enforceable term and induced or contributed to use of the Accused Instrumentalities by instructing, encouraging, and enabling customers and users to register HomeHawk devices,

16

authenticate, connect access points and cameras, and use the HomeHawk app and Panasonic cloud services to remotely monitor or control user-premises devices and review stored information.

## IX. CONDITIONS PRECEDENT

57. Plaintiff has never sold a product. Upon information and belief, no Plaintiff predecessor-in-interest has ever sold a product. Neither Plaintiff nor any licensee made or sold a patented article. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

58. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that it was infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus was not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method or system-use damages for which no marking requirement applies, and/or will show that any marking obligation was satisfied or inapplicable.

59. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to show that the alleged unmarked product does not practice the Patents-in-Suit and/or that Plaintiff has substantially

complied with the marking statute. Defendant has not identified any alleged patented article for which § 287(a) would apply. Further, Defendant has not alleged any defendant entity produced a patented article under authority from Plaintiff.

60. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that an article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286, which allows for recovery of damages for six years prior to the filing of the complaint, subject to the expiration and other limitations stated herein.

61. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and the defendant entity for patent infringement; (3) the defendant entity did not believe it produced any product that could be considered a patented article under 35 U.S.C. § 287; and (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. § 287 for each prior settlement license.

62. Each settlement license that was entered into between a defendant entity and Plaintiff was negotiated in the face of continued litigation and, while Plaintiff believed there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

18

63. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiff to make an effort to require a prior settling defendant to mark products Plaintiff had accused of infringement. To the extent necessary, Plaintiff will develop evidence in discovery showing that no prior settlement license required or authorized future manufacture or sale of a patented article under the Patents-in-Suit.

## X. JURY DEMAND

64. Plaintiff demands a trial by jury on all issues so triable.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A. That Defendant infringed one or more claims of the Patents-in-Suit during the enforceable terms of the Patents-in-Suit and within the applicable damages period;

B. That Plaintiff be awarded damages adequate to compensate Plaintiff for Defendant's infringement during the enforceable terms of the Patents-in-Suit and within the applicable damages period, but in no event less than a reasonable royalty, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

C. That this case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees and costs to the extent permitted by law;

D. That Plaintiff be awarded all other relief to which it is entitled at law or in equity, except that Plaintiff does not seek injunctive relief or damages for any alleged post-expiration infringement of the Patents-in-Suit.

19

DATED: June 3, 2026

Respectfully submitted,

**Ramey LLP**

By: */s/ William P. Ramey, III*
    William P. Ramey, III
    Texas Bar No. 24027643
    446 Heights Blvd., Suite 200
    Houston, Texas 77007
    (713) 426-3923 (telephone)
    (832) 900-4941 (fax)
    wramey@rameyfirm.com

***Attorneys for Portus Singapore PTE Ltd & Portus PTY Ltd***

20